## COUNTY OF BRISTOL *vs.* FRANKLIN GRAY.

Bristol. Oct. 29, 1884. — Sept. 3, 1885. COLBURN, J., absent.

Under the Pub. Sts. *c.* 220, § 56, the master of a house of correction may employ a person to sell the articles manufactured by the prisoners; and, it being no part of the duty of a county commissioner to perform such services, a payment made to him for his expenses incurred in making such sales cannot be recovered of the commissioner in an action by the county.

CONTRACT, upon an account annexed, for money had and received. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, upon agreed facts, in substance as follows:

The defendant is, and for the four years preceding has been, one of the county commissioners of Bristol. The sums of money set forth in the account annexed to the declaration were paid to the defendant by Charles D. Burt, who, at the time of making said payments, was the master of the house of correction for said county. These sums of money were paid by Burt on account of said county, and were by him charged to the county; and he was allowed said sums in the settlement of his accounts with the county treasurer as for " expenses of selling shoes," and

said amounts were paid to him by the treasurer out of the funds of the county.

Burt employed the prisoners in said house of correction in manufacturing shoes, and employed the defendant, on account of his knowledge of the shoe trade, to go to Boston and other places to sell the shoes so manufactured, claiming the right so to employ him under the authority of the Pub. Sts. *c.* 220, § 56, requiring him, as such master, to cause the articles manufactured by the prisoners to be disposed of to the best advantage. It was necessary for Burt to employ some one, as his own duties were such as to prevent him from personally attending to the matter. The services so rendered by the defendant were useful to the county, and assisted the master materially in disposing of the shoes so manufactured to the best possible advantage, and the arrangement was an economical one for the county.

The sums in question included no allowance whatever for the time or the services of the defendant, but only his actual travelling expenses while so employed by Burt in selling shoes.

While so engaged, the defendant was performing no service for the county in his capacity of county commissioner or otherwise, unless his employment by Burt was such a service. The sums so paid to the defendant were entered on the books of Burt, and allowed in his accounts with the county treasurer, as paid to the defendant individually, and not to him as county commissioner. The defendant, Burt, and the county treasurer acted under the advice of the then Attorney General, in charging, allowing, and paying said sums. The defendant has received the whole amount of salary due him as county commissioner, besides, and not including, the sums named in the account annexed.

If, on the foregoing facts, the defendant had a right to receive and retain the sums so paid him, in addition to his salary, judgment was to be entered for him; otherwise, judgment for the plaintiff.

*E. J. Sherman*, Attorney General, for the plaintiff.

*J. M. Morton & A. J. Jennings*, for the defendant.

FIELD, J. The Pub. Sts. *c.* 22, § 14, provide that "the commissioners and special commissioners of the several counties

shall receive from the respective county treasuries, in full payment for all their services and travel, the following annual salaries . . . . to be divided among the county commissioners in proportion to the services rendered, the travel performed, and the expenses incurred by each; and no other or additional compensation shall be paid to them for any service performed by them for their respective counties." By the Rev. Sts. *c.* 84, § 4, they were to be paid one dollar for every ten miles travelled, and three dollars a day "for the time employed in discharging the duties of their office." By the St. of 1859, *c.* 163, § 1, they were to be paid, "out of the treasury of each county, a fixed annual salary, which shall be in full payment for all services rendered, and travel performed by them in discharge of their duties in their respective counties." See also Gen. Sts. *c.* 17, § 29; St. 1860, *c.* 185, § 1. The St. of 1864, *c.* 280, § 1, provided that "the salaries provided for the county commissioners of the several counties, by chapter one hundred and eighty-five of the acts of the year eighteen hundred and sixty, shall hereafter be taken to be in full payment for all ser vices rendered, travel performed, and expenses incurred," &c.; "and no other or additional compensation shall be paid them, for any service performed by them for their respective counties." The St. of 1867, *c.* 340, provided that "the commissioners and special commissioners of the several counties of the Commonwealth shall receive," &c., "in full payment for all their services and travel payable as now provided by law, the following annual salaries," &c. See Sts. 1871, *c.* 236; 1872, *c.* 151; 1879, *c.* 295.

We think these statutes and the Public Statutes mean that the annual salaries shall be in full payment for all their services and travel as county commissioners; and that no other compensation for such services and travel shall be paid to them.

The county commissioners provide a house or houses of correction for the counties, Pub. Sts. *c.* 220, § 7, and suitable materials and implements, and establish needful rules, § 11; and examine all accounts of the master "relating to the earnings of the prisoners and all expenses of the institution," &c. § 12. They may make contracts for work to be done, or for letting out to hire the prisoners. §§ 13, 14. The sheriff, except in the county of Suffolk, has "the custody, rule, and charge" of the house of

correction and of all prisoners therein, " and shall keep the same by himself, or by his deputy as jailer, master, or keeper, for whom he shall be responsible." §§ 23, 33. The county commissioners, " without extra charge or commission to themselves or to any other person," procure the necessary supplies for the house of correction. § 53. The charges and expenses, &c. " shall be paid from the county treasury, the accounts of the keeper or master being first settled and allowed by the commissioners," &c. § 54. By § 56, it is provided that " each master or keeper shall cause the articles manufactured by the prisoners in his custody, or the produce of their labor, to be disposed of to the best advantage, and under the direction of said commissioners, . . . . shall cause accounts to be kept of the proceeds thereof, and shall present such accounts to them for settlement semiannually," &c. " He shall pay into the treasury . . . . the amount of sales and other proceeds of the labor and earnings of the prisoners in his custody, or the balance thereof." These provisions are derived from the St. of 1834, c. 151, § 18.

The general scheme is, that the sheriff, by his deputy as master, shall be responsible for the safe keeping of the prisoners, and that the county commissioners shall furnish the necessary supplies, material, and implements, establish rules for employing, reforming, governing, and punishing the prisoners, make contracts for the work of the prisoners, and settle the accounts of the master. But it is the duty of the master to dispose of the articles manufactured to the best advantage, and in this the statutes do not make the master the agent or servant of the commissioners. The commissioners do not appoint him, and they cannot remove him, although they may ask the Superior Court to remove him ; Pub. Sts. c. 220, § 24 ; and we cannot see that it is any part of the duty of the commissioners to make sales of the articles produced by the labor of the prisoners. The necessary and reasonable expenses of making such sales should, of course, be allowed the master. The defendant, therefore, in making the sales, was not acting as county commissioner ; and whatever may be the propriety of forbidding by law any such employment of a commissioner by the master, a majority of the court think it is not forbidden by existing statutes.

*Judgment affirmed.*